857 F.2d 945
 LIBERTY LIFE INSURANCE COMPANY, Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY; American Employer's
Insurance Company; Home Indemnity Company;
Mission National Insurance Company;
United States Fire Insurance
Company, Defendants-Appellees.
 No. 86-2111.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1987.
Decided Sept. 16, 1988.
 
 Gaspare Joseph Bono (Martin J. Weinstein, Howrey & Simon, Washington, D.C., R. David Black, Greenville, S.C., on brief), for plaintiff-appellant.
 R. Bruce Shaw (Thornwell F. Sowell, III, James A. Merritt, Jr., Nelson, Mullins, Riley & Scarborough, on brief) Thomas C. Salane (Turner, Padget, Graham & Laney, Wilburn Brewer, Jr., Paul R. Clements, Susan B. Lipscomb, Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., John B. McLeod, H. Sam Mabry, III, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., on brief), for defendants-appellees.
 Before WIDENER and HALL, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 The plaintiff, Liberty Life Insurance Company (Liberty), appeals from the district court's order granting summary judgment to the defendants, former insurance carriers of Liberty. Finding this stage of the proceeding to be premature for the dismissal of any of the defendants, we vacate and remand for further proceedings.
 
 
 2
 This suit was brought by Liberty against its insurance carriers based upon their refusal to defend Liberty in a series of lawsuits brought against Liberty by Metropolitan Life Insurance Company (Metropolitan).[1] The Metropolitan lawsuits all involved an alleged scheme by Liberty to destroy Metropolitan's business. Metropolitan charged that Liberty had enticed Metropolitan's agents away, induced the agents to disparage Metropolitan's policies, and appropriated Metropolitan's customer lists and trade secrets. As the district court noted, the Metropolitan complaints were replete with allegations of intentional misconduct on the part of Liberty.
 
 
 3
 The theories of recovery alleged in the various Metropolitan lawsuits were as follows:
 
 
 4
 North Carolina--Nov. 1983--Unfair competition, tortious interference with contractual relations, willful and malicious appropriations of trade secrets, common law misappropriation of trade secrets.
 
 
 5
 South Carolina--Nov. 1983--Antitrust violations (Sherman Act, conspiracy in restraint of trade, monopolistic practices), state antitrust violations and unfair trade practice violations, common law unfair competition, wrongful appropriation of trade secrets, breach of duty of loyalty.
 
 
 6
 Florida--Nov. 1983--Conspiracy (unfair interference with customer business relations).
 
 
 7
 Minnesota--June 1984--Conspiracy, misappropriation of confidential information and trade secrets, violations of the Uniform Trade Secrets Act, unfair competition, tortious interference with employment relations, breach of loyalty, commercial disparagement, tortious interference with contractual relations, breach of contract.
 
 
 8
 Missouri--June 1984--Misappropriation of trade secrets and confidential information, breach of fiduciary duty, conversion, tortious interference with contracts and business relations, tortious interference with employment relations, trade disparagement, civil conspiracy, prima facie tort.
 
 
 9
 During the time frame of the Metropolitan lawsuits, Liberty carried a comprehensive general liability insurance policy through defendants, American Employer's Insurance Company (American)[2] and Home Indemnity Company (Home).[3] While the insurance policies were not identical, they were substantially the same standardized form with respect to terms and definitions. The defendants contracted to provide coverage for property damage, bodily injury, personal injury and advertising injury. In addition to these comprehensive policies, Liberty obtained excess umbrella coverage for the relevant period from defendants, Mission National Insurance Company (Mission) and United States Fire Insurance Company (U.S. Fire).[4] As with the primary policies, the umbrella policies were not identical. They were, however, similar in that both were policies designed to incorporate substantially the terms of the primary policies.
 
 
 10
 For property damage and bodily injury, each of the four policies at issue predicates some of the duties of the insurance company upon the happening of an occurrence. While the term occurrence is defined in similar fashion in each of the four policies, certain distinctions in these definitions require that each definition be set forth. With respect to the two primary policies, both defined occurrence as (American and Home):
 
 
 11
 ...an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
 
 
 12
 (Emphasis supplied) The umbrella policy of Mission defines occurrence as:
 
 
 13
 ...an accident or a happening or event or a continuous and repeated exposure to conditions which unexpectedly or unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.
 
 
 14
 (Emphasis supplied) The policy of U.S. Fire defined occurrence as:
 
 
 15
 (a) with respect to Bodily Injury Liability or Property Damage Liability, injurious exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
 
 
 16
 (b) With respect to Personal Injury Liability, an offense which results in Personal Injury, other than an offense committed with actual malice or the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
 
 
 17
 (c) with respect to Advertising Liability, all damages involving the same injurious material or act regardless of the frequency or repetition thereof, the number or kind of media used, and the number of claimants and all such damages shall be considered as arising out of the same occurrence.
 
 
 18
 Each policy also contained a specific definition of what constituted advertising liability as covered by the individual policies. Again, these definitions were quite similar. American and Home, the primary carriers, defined advertising injury as:
 
 
 19
 "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title or slogan.
 
 
 20
 Mission, one of the excess policy carriers, defined advertising injury as:
 
 
 21
 ADVERTISING LIABILITY--
 
 
 22
 The term "Advertising Liability," whenever used here, shall mean:
 
 
 23
 (1) Libel, slander or defamation:(2) Any infringement of copyright or of title or of slogan:
 
 
 24
 (3) Piracy or unfair competition idea misappropriation under an implied contract:
 
 
 25
 (4) Any invasion of right of privacy: committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.
 
 
 26
 Finally, U.S. Fire, the other excess carrier, defined advertising injury as:
 
 
 27
 "Advertising Liability" means libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of rights of privacy committed, or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Named Insured's advertising activities.
 
 
 28
 While in the process of defending the Metropolitan lawsuits, and in some cases after a settlement had been reached with Metropolitan, Liberty gave notice to each of the defendant insurance companies by forwarding copies of the complaints.[5] None of the defendant insurance companies attempted to defend Liberty in any of the Metropolitan suits, nor did they offer to reimburse Liberty for the expenses associated with those suits. Liberty then brought the instant lawsuit. Although Liberty asserts a variety of theories of recovery,[6] and prays for punitive damages, the gist of this action is the attorneys fees and expenses expended by Liberty in defense of the Metropolitan suits.[7] Upon cross-motions for summary judgment, the district court entered judgment in favor of all the defendants. The district court based its decision entirely upon the finding that an occurrence (defined in each of the policies) had not taken place, that an occurrence was required under each policy to trigger a duty to defend, and therefore no duty to defend ever existed. Since the district court found no duty to defend on the part of any defendant, it found in favor of the liability carriers on the balance of Liberty's claims, all of which related to the inaction of the liability carriers. This appeal followed.
 
 
 29
 The district court was correct in determining that there had been no occurrence as that term is defined in any of the policies with respect to property damage or bodily injury. In each of the policies, as heretofore discussed, occurrence was defined in such manner as to require an unintended or unexpected result from the standpoint of the insured. However, this definition is expressly linked only to property damage and bodily injury in the policies of American, Home and U.S. Fire. The policy of Mission, on the other hand, links this unexpected or unintended result to all risk categories.
 
 
 30
 The duty of a liability insurer to defend an action brought against the insured is generally determined by the allegations in the complaint.[8] Employers Mut. Liability Ins. Co. v. Hendrix, 199 F.2d 53, 56 (4th Cir.1952) (applying South Carolina law); R.A. Earnhardt Textile Mach. Div., Inc. v. South Carolina Ins. Co., 277 S.C. 88, 282 S.E.2d 856 (1981). If the facts alleged in the complaint raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend. If no such possibility is raised, no duty of defense is owed.[9] Id. Hence, whether a duty to defend exists is determined by comparing the allegations of the complaint to the terms of the policy.
 
 
 31
 The injuries that Metropolitan alleged were inflicted by Liberty, and cannot reasonably be considered to be accidental, unintentional, or unexpected from the standpoint of Liberty. Each complaint alleges a conscious scheme by Liberty to destroy Metropolitan's business, entice its agents away and cause its agents to steal Metropolitan's materials and secrets. The Supreme Court of South Carolina has construed similar occurrence clauses to exclude from coverage injuries caused by the intentional conduct of the insured, including breach of contract, fraud and unfair trade practices. R.S. Earnhardt Textile Mach. Division, Inc. v. South Carolina Ins. Co., 277 S.C. 88, 282 S.E.2d 856 (1981); General Ins. Co. of America v. Palmetto Bank, 268 S.C. 355, 233 S.E.2d 699 (1977); Stroup Sheet Metal Works, Inc. v. Aetna Casualty & Surety Co., 268 S.C. 203, 232 S.E.2d 885 (1977). The district court was correct in finding no occurrence as such term was defined for the property damage and bodily injury risk categories. Significantly, in the South Carolina cases cited, supra, the insurance policies covered only property damage and bodily injury. Advertising liability was not an issue.
 
 
 32
 The district court, however, erred in dismissing the primary carriers, Home and American, and excess carrier, U.S. Fire, from the lawsuit. All three of those policies insured Liberty for claims arising out of unfair competition and disparagement in its advertising activities under sections entitled personal injury and advertising liability coverage. As shown above, many of the claims by Metropolitan alleged unfair competition and disparagement. While conceding as much in their arguments, the defendant carriers assert that these claims did not arise in connection with Liberty's, the insured's, advertising activities. This point, however, was not addressed by the district court and requires consideration upon remand. In this connection, we note that the policies themselves are silent as to what constitutes advertising activity. When these policies are construed against the drafter, it is arguable, for example, that the activities of Liberty's agents, as alleged in the Metropolitan complaints, could be termed advertising. This is particularly so where, as here, we are dealing with the duty to defend, when we remember that the duty to defend in South Carolina is broader than the duty to indemnify. See Sloan Const. Co., Inc. v. Central Nat. Ins. Co. of Omaha, 269 S.C. 183, 236 S.E.2d 818, 820 (1977). Additionally, we address this issue at the summary judgment stage where all factual doubt must be resolved in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In all events, we express no opinion upon that question.
 
 
 33
 We do not agree with the district court that there was a requirement of an unexpected or unintended result from an occurrence to trigger coverage under the advertising liability section of each policy, except the policy of Mission. The two primary policies, American and Home, did not include advertising liability in those policies' restricted definitions of occurrence, and the U.S. Fire policy defined occurrence separately for advertising liability as shown above. Although those three policies (American, Home and U.S. Fire) required such an occurrence to invoke coverage for property damage and property damage was alleged in the Metropolitan lawsuits, "... an insurer is not excused from defending suits against the policyholder by the joinder in the same suits of causes of action covered by the policy with the other causes of action beyond its scope...." Employers Mut. Liability Co. of Wisconsin v. Hendrix, 199 F.2d 53, 59 (4th Cir.1952).
 
 
 34
 The excess policy issued by defendant, Mission, is on a somewhat different footing as it purported to require an unexpected or unintended occurrence to trigger coverage in any risk category. Since the allegations of the complaints in the Metropolitan suits cannot reasonably be construed as alleging an occurrence as defined in this policy, Mission, at first glance, might seem to owe no duty to Liberty to defend the actions. Mission did, however, specifically insure for injuries arising out of the insured's actions which included libel, slander, defamation or unfair competition in connection with its advertising activities. Actions of that nature are not usually deemed unintentional or unexpected. To allow Mission to escape coverage at this stage of the proceeding under its definition of occurrence would make much or all of the advertising liability coverage illusory. At the least there may well be a conflict or ambiguity between these provisions, which under South Carolina law, should be resolved in favor of the insured. Gaskins v. Blue Cross Blue Shield of South Carolina, 271 S.C. 101, 245 S.E.2d 598 (1978). At a minimum, the circumstances of the alleged libel, slander, defamation and unfair competition need to be explored further to determine whether they are covered by this policy. Thus, the judgment for Mission must be vacated as well.
 
 
 35
 The carriers also raise as a defense the failure of Liberty to give timely notice of the Metropolitan suits as required by the policies. That, too, is a question the district court should address in the first instance. Additionally, U.S. Fire and Home have defenses specific to their status as umbrella carriers. If liability is established on the part of the primary carriers, the excess policies would not be liable until that primary coverage is exhausted. But, at this time, it would be premature to let the umbrella carriers out of the lawsuit. Considering the myriad combinations of defenses that may eventually be asserted, we cannot say that there is no set of facts Liberty could prove to establish liability for the excess carriers.
 
 
 36
 The district court based its dismissal of Liberty's remaining causes of action on its finding that no defendant owed Liberty a duty to defend the Metropolitan lawsuits. Since the ultimate liability of the defendant carriers must await further proceedings in the district court, we reinstate these counts in order to allow the district court to judge their worth anew in light of our decision. Likewise, the district court should consider in the first instance the other defenses raised by the carriers.
 
 
 37
 We again stress that we are not establishing or apportioning liability. We only hold that liability has been prematurely foreclosed. The judgment of the district court order is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 38
 VACATED AND REMANDED.
 
 
 
 [1]
 These lawsuits will hereinafter be referred to as the Metropolitan lawsuits. Liberty was not actually named as a party in two of these actions, but some of its agents and officers were. The defendants claim that Liberty has no standing to sue to recover defense costs in those actions because it was not named. Due to our disposition of the case, we leave that question for the district court to consider in the first instance
 
 
 [2]
 Another defendant, Commercial Union Insurance Company, is being sued on the same policy issued by defendant American. American and Commercial Union apparently are related corporations, since materials bearing the letterhead of one or the other appear together in the record relating to this policy. One of the arguments advanced in the appellees' brief is that Commercial Union is not liable to Liberty because it entered into no insurance contract with Liberty. The district court did not address this issue, and we leave it to that court to decide should liability be imposed on the basis of that policy. The district court treated the policy as American's, and we will do the same for the sake of convenience, bearing in mind that Commercial Union's potential liability under this policy has in no way been determined
 
 
 [3]
 American's policy covered the period September 1, 1980 to September 1, 1983. Home's policy covered the period September 1, 1983 to September 1, 1984. Thus, there is no overlap in coverage between the policies of the two defendants. This is likewise true with the umbrella excess policies. As no conclusion is reached in this opinion as to the existence or extent of any liability, as was the case in the district court's order, we will leave it to the district court on remand to decide, if necessary, which policies covered damage arising from the Metropolitan lawsuits
 
 
 [4]
 The policy of defendant Mission covered the period September 1, 1982 to September 1, 1983. The policy of U.S. Fire covered the period September 1, 1983 to September 1, 1984
 
 
 [5]
 As discussed, infra, since we do not establish liability in this opinion, the timeliness or adequacy of the notice given by Liberty need not be addressed by this court
 
 
 [6]
 Liberty seeks to recover, in addition to indemnification for the expenses incurred defending the Metropolitan lawsuits, damages for bad faith conduct, deceptive trade practices, fraud, misrepresentation, negligence and RICO violations
 
 
 [7]
 All of the suits were eventually settled and dismissed without payment by Liberty of any damages
 
 
 [8]
 Because jurisdiction is based upon diversity of citizenship, 28 U.S.C. Sec. 1332, we look to the law of South Carolina to determine the issues in this case. Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [9]
 It is settled that the duty of a liability insurer to defend is broader than its duty to indemnify. See, e.g., Sloan Construction Company, Inc. v. Central National Insurance Company of Omaha, 269 S.C. 183, 236 S.E.2d 818 (1977)