**SOLERS, INC., Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant.**

**Civil Action No. 00–1947–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 4, 2001.

---

Stephen W. Grafman, Kirkpatrick & Lockhart, Washington, DC, for plaintiff.

Richard W. Driscoll, Eccleston and Wolf, Washington, DC, for defendant.

### Memorandum Opinion and Order

LEE, District Judge.

THIS MATTER is before the Court on Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment. This case involves a dispute about an insurance company's duty to defend an insured in an action involving the alleged misappropriation of trade secrets and customer lists, and the exploitation of a commercial opportunity. The question presented is whether the subject matter of the misappropriation dispute arguably falls within the insurance policy's definition of "advertising injury." First, the Court must consider whether the defendant insurance company has a duty to defend the insured in a claim brought by a former employer for tortious interference with contract, breach of fiduciary duty, conspiracy, misappropriation of trade secrets, and conversion under the insurance policy's "advertising injury" coverage. Solers, Inc., the insured, asserts that the disputed claim is within the purview of the insurance company's duty to defend an "advertising injury" because the third party claimant asserts that Solers misappropriated business proposals and plagiarized marketing materials in order to take improperly the claimant's customers. Second, the Court must consider whether the submission of written proposals to a potential customer soliciting business one-on-one constitutes "advertising," "misappropriation of advertising ideas," or "infringement of copyright, title or slogan" within the meaning of the insurance contract such that the insurance company had a duty to defend the civil suit against Solers. Third, assuming that coverage would apply, the Court must consider whether Solers can show a causal connection between the alleged misappropriation and the third party's claim for damages. Fourth, if the disputed claim falls within the purview of the insurance policy, then the Court must determine whether Solers' claims for legal fees in connection with defense of the third party's claim is covered by the insurance policy where it is shown that the acts

complained of occurred for the first time *before* the insurance policy issued.

The Court finds that resolution of the first issue renders unnecessary an analysis on the succeeding issues. The Court holds that Solers' submission of proposals on a one-to-one basis does not rise to the level of advertising activity. Advertising is the widespread promotion of goods or services to the public at large, or to the company's customer base. Because the Court concludes that Solers' submission of proposals to two customers does not constitute "advertising," the Court holds that the insurance company did not have a duty to defend Solers. Therefore, summary judgment will be granted for Defendant insurance company, Hartford Casualty Insurance Company.

## I. BACKGROUND

Plaintiff Solers, Inc. was founded by David Kellogg and Joseph Smith. Before founding Solers, Kellogg and Smith worked for a company called Decision Science Applications, Inc. ("DSA"). They then worked for SM & A Corporation, which acquired DSA. Kellogg and Smith were displeased with the structure and business plan of SM & A as contrasted with how DSA had been run. Therefore, Kellogg and Smith left SM & A to form their own company: Solers.

Solers, and previously DSA, engineer sophisticated computer programs and software for government agencies. The solicitation of business from federal government agencies is regulated by federal law contained in the Federal Acquisition Regulations ("FAR") and Defense Federal Acquisition Regulations Supplement ("DFARS"), 48 C.F.R. §§ 1–99, 200–299. FAR and DFARS require agencies and contractors to abide by regulatory protocols in the solicitation and award of government contracts. For companies such

as Solers (and DSA), the principal mechanism used to solicit government contract business is the proposal submission process, which is governed by FAR and DFARS. SM & A's main line of business involves assisting government contractors in the preparation of proposals. Solers has obtained all of its business through the submission of formal written proposals. Companies like Solers sometimes submit proposals to federal agencies on an unsolicited basis.

To start its business, Solers submitted proposals to two federal contractors to work on federal projects: Charles Stark Draper Laboratory ("Draper") and Boeing Information Services, Inc. ("Boeing"). Before the SM & A acquired DSA, Kellogg and Smith wrote proposals for DSA to act as a subcontractor to Draper and Boeing. SM & A retained the proposals. SM & A believed that the proposals Solers submitted to Draper and Boeing were based on proposals that Solers misappropriated from SM & A. SM & A sued Solers for interference with contractual relations, breach of fiduciary duty, conspiracy, misappropriation of trade secrets, and conversion. SM & A's principal allegations were that Solers misappropriated business opportunities by the misuse of SM & A's confidential materials and proprietary trade secrets.

Solers had a business insurance policy ("Policy") with Defendant Hartford Casualty Insurance Company. The Hartford Policy was effective for the period January 4, 1999 to January 4, 2000. The Policy provided coverage for "personal and advertising injury." The definition for advertising injury included injury arising out of the offense of "misappropriation of advertising ideas or styles of doing business" or "infringement of copyright, title or slogan." The policy stated that Hartford would pay sums up to $1,000,000.00 that

the insured became legally obligated to pay as damages, and that Hartford had the duty to defend any suit seeking damages. The policy further provided: "This insurance applies to ... 'advertising injury' caused by an offense committed in the course of advertising your goods, products or services[, but] only if the offense was committed in the 'coverage territory' during the policy period."

Upon being sued by SM & A, Solers filed a claim for defense and indemnification with Hartford under the Policy. Hartford denied Solers' claim for coverage. Hartford asserted that Solers' submission of proposals was not "advertising," and that any offense alleged against Solers was not committed "in the course of advertising" (i.e., that any misappropriation of trade secrets occurred before Solers' supposed advertising, not in the course of the advertising). Hartford argued, therefore, that injury from suit arising out of Solers' proposal submission was not covered by the Policy, and that, therefore, Hartford had no duty to defend the lawsuit. Solers settled the suit with SM & A for $100,000.00.

Solers asserts that Hartford breached its contractual obligation to defend Solers in the SM & A lawsuit, and that Hartford was obligated to reimburse Solers for Solers' expenses incurred in defending the SM & A litigation. Solers sues Hartford for the damages Solers has agreed to pay SM & A, as well as for the litigation and settlement expenses, fees, and costs for the SM & A lawsuit. In total, Solers seeks to recover $714,471.76.

## II. THE PARTIES' CONTENTIONS

The parties raise a number of arguments addressing whether the Policy covers SM & A's claims (1) because the claims are based on Solers' submission of proposals, (2) because acts alleged by SM & A might have occurred before the Policy period's inception, (3) because the proposals might not embody advertising ideas, and (4) because Solers' alleged misappropriation might constitute infringement of copyright. The Court finds that resolution of the first argument renders unnecessary analysis of the succeeding arguments. Therefore, the only contentions set forth herein are the parties' contentions addressing whether proposal submission constitutes "advertising" such that Policy coverage is appropriate.

### A. Defendant Hartford

Hartford argues that it had no obligation to defend the SM & A suit because it was not liable under its contract for the allegations as stated in SM & A's complaint. *See Virginia Electric & Power Co. v. Northbrook Property & Cas. Ins. Co.,* 252 Va. 265, 475 S.E.2d 264, 265–66 (1996); *Lerner v. General Ins. Co.,* 219 Va. 101, 245 S.E.2d 249, 251 (1978); *see also Town Crier, Inc. v. Hume,* 721 F.Supp. 99, 102 (E.D.Va.1989), *aff'd,* 907 F.2d 1140 (4th Cir.1990). Hartford argues that Solers' claim for coverage must fail because: (1) the conduct alleged in SM & A's complaint was not an offense defined by the policy as giving rise to "advertising injury," and (2) the conduct alleged in the complaint did not occur in the course of advertising Solers' products or services.

Hartford contends that it had no duty to defend on the basis of proposal submission because the term "advertising" must be given its ordinary and customary meaning. *See Lower Chesapeake Associates v. Valley Forge Ins. Co.,* 260 Va. 77, 532 S.E.2d 325, 330 (2000); *Scottsdale Ins. Co. v. Glick,* 240 Va. 283, 397 S.E.2d 105, 108 (1990). Thus, advertising is the widespread dissemination of promotional materials to the public at large, and does not include one-to-one solicitations. *See, e.g.,*

*Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 894–95 (7th Cir.1996) (hereinafter "Sear"); *Select Design, Ltd. v. Union Mut. Fire Ins.*, 165 Vt. 69, 674 A.2d 798, 802 (1996); *Monumental Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 94 Md.App. 505, 617 A.2d 1163, 1174 (Spec.App.1993); THE AMERICAN HERITAGE DICTIONARY (4th ed.2000); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (2001). Hartford asserts that Solers' submission of bid proposals to single customers Draper and Boeing does not come within this definition of advertising. *See Peerless Lighting Corp. v. American Motorists Ins. Co.*, 82 Cal.App.4th 995, 98 Cal.Rptr.2d 753, 763 (2000) (stating that "advertising" as used in insurance policy does not include effort to sell through competitive bidding process a product specifically manufactured for a single customer for a specific project); *Select Design*, 674 A.2d at 801–03 (rejecting argument that contacting customers to solicit business was advertising). Hartford notes that the submission of proposals is a means of soliciting business, but argues that advertising and solicitation are mutually exclusive. *See Monumental Life*, 617 A.2d at 1173–74 (stating that advertising must be of a public nature, while solicitation need not be).

### B. *Plaintiff Solers*

Solers notes first that a determination of whether an insurance carrier has a duty to defend involves a review of the policy itself to determine the terms of coverage and the allegations in the underlying action to ascertain whether the action involves claims covered by the policy. *See Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 242 (4th Cir.1995). Then Solers asserts that the main issue is whether SM & A's allegations constitute "advertising injury" under the Policy. Solers acknowledges that insurance policy terms should be construed in light of their subject matter, and a policy's words and phrases "should be given their natural and ordinary meaning as understood in the business world." *See London Guarantee & Acc. Co. v. C.B. White & Bros.*, 188 Va. 195, 49 S.E.2d 254, 259 (1948). However, Solers contends that because the term "advertising" is undefined in the Policy, here the term is ambiguous.

Solers argues that case law acknowledges that the concept of "advertising" is a broad term. *See United States Fid. & Guar. Co. v. Star Techs.*, 935 F.Supp. 1110, 1114 (D.Or.1996) (hereinafter "Star Techs."); *Farmington Casualty Co. v. Cyberlogic Tech., Inc.*, 996 F.Supp. 695, 700 (E.D.Mich.1998); *Amway Distrib. Benefits Ass'n v. Federal Ins. Co.*, 990 F.Supp. 936, 945 n. 6 (W.D.Mich.1997); *Curtis–Universal, Inc. v. Sheboygan Emergency Med. Svs., Inc.*, 43 F.3d 1119, 1125 (7th Cir. 1994). Courts have found the term ambiguous because it is undefined in insurance policies, and have construed it broadly in favor of coverage. *See Star Techs.*, 935 F.Supp. at 1115; *John Deere Ins. Co. v. Shamrock Indus.*, 696 F.Supp. 434, 440 (D.Minn.1988); *Amway Distrib. Benefits Ass'n*, 990 F.Supp. at 945. Solers notes that in a case involving Hartford as a defendant, a California court held that a broad view of advertising was preferable to a narrow one:

> While some courts have construed this term narrowly, other courts have defined advertising activity as broadly as possible to encompass a great deal of activity. The better view, however, is that the term 'advertising' encompasses the kind of personal, one-to-one and group solicitations that [were engaged in here].

*Sentex Sys. v. Hartford Accident and Indemnity Co.*, 882 F.Supp. 930, 939 (C.D.Cal.1995), *aff'd*, 93 F.3d 578 (9th Cir. 1996).

Solers argues that the Fourth Circuit has acknowledged the ambiguity of the term "advertising" when it is undefined. *See Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d 945, 950 (4th Cir.1988). Although it did not define "advertising," the Fourth Circuit in *Liberty Life Ins.* noted that when an insurance policy was construed against the drafter, one-to-one solicitations could arguably be termed advertising. *See id.* In addition, Solers asserts that dictionaries that Hartford has failed to cite include a broader definition of advertise. *See* BLACK'S LAW DICTIONARY 54 (6th ed.1990) (defining advertise as "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (defining advertise as, *inter alia*, "call attention to: give notice of").

In addition, Solers argues that the cases Hartford cites that apply the narrow definition of "advertise" do so while acknowledging the ambiguity in the term, or involve distinctions that make those cases unpersuasive here. *See, e.g., Monumental Life*, 617 A.2d at 1172–73 (relying on *Playboy Enters. v. St. Paul Fire & Marine*, 769 F.2d at 430, which applied a narrow definition because the term was used in a policy *exclusion* and so had to be applied narrowly against the insurer); *Peerless Lighting Corp.*, 98 Cal.Rptr.2d at 764 (stating that, under appropriate circumstances, personal solicitations may constitute advertising activity); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 17 Kan.App.2d 492, 839 P.2d 537 (1992), *aff'd*, 253 Kan. 198, 855 P.2d 77 (1993) (failing to establish advertising injury because there was no link between alleged advertising and alleged injury).

Solers argues that its proposals constitute advertising. *See Sear*, 102 F.3d at 894 (stating that "actions taken in the course of advertising must involve actual, affirmative self-promotion of the actor's goods or services."). Solers asserts that, due to the multiple interpretations of the word "advertising", the Court must find ambiguity and should construe the term strictly against Hartford. *See National Fire Ins. Co. v. Dervishian*, 206 Va. 563, 145 S.E.2d 184, 187 (1965). Solers contends that the Court should construe the term in a manner consistent with the reasonable expectations of the parties. *See Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir.1995); *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 57 (4th Cir.1995). Specifically, Solers argues that the Court should construe the term by how Solers, as the insured, would have reasonably understood the term under the circumstances. *See Curtis–Universal*, 43 F.3d at 1123; *American Econ. Ins. Co. v. Reboans*, 900 F.Supp. 1246, 1252 (N.D.Cal. 1994).

Solers contends that, in this case, Solers intended to have coverage for any offense arising out of Solers' proposals. Solers notes that it provides services exclusively pursuant to government contract. Widespread public dissemination of solicitation material is not appropriate for Solers' business. Therefore, Solers asserts that its only advertising mechanism is the submission of written business proposals. Solers argues that the Court must find that the proposals constitute advertising because to hold otherwise on the grounds that the proposals are not directed at the public at large would be to hold that companies with small, but well-defined markets cannot, as a matter of law, engage in advertising. *See Farmington Casualty Co.*, 996 F.Supp. at 701. Solers asserts that this would not comport with the usage of the term "advertising" or with basic notions of fairness. *See id.; see also New Hampshire Ins. Co. v. R.L. Chaides Constr. Co.*, 847 F.Supp. 1452, 1456

(N.D.Cal.1994). Solers contends that its reasonable expectation was that conduct alleged relating to proposal submission would constitute "advertising activity;" if not, the coverage Solers purchased for advertising injury would be a nullity.

Finally, Solers asserts that Hartford knew that "advertising" was a broad term and knew how to apply a narrow definition. Hartford's Policy contains an exclusion for injury arising out of, *inter alia,* testing. (Def. Mot. for Summ. J., Ex. 1: Policy ¶ G.1.) This narrowing exclusion has nothing to do with something that can be "widely disseminated." Therefore, Hartford is relying on something other than the "ordinary meaning" of "advertising."

## III. DISCUSSION

### A. *Standard of Review*

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if, viewing the record in the light most favorable to the nonmoving party, the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See id.*

### B. *Analysis*

In filing cross motions for summary judgment, the parties agree that there are no material issues of fact in dispute here. Therefore, the Court must decide whether summary judgment is appropriate by looking at the four corners of the Policy and SM & A's Amended Complaint. *See Fuisz,* 61 F.3d at 242. Except as to the issue of the definition of "advertising," the Policy speaks for itself-as discussed below. For reading complaints, Virginia courts follow a rule for coverage of a complaint's allegations that is a combination of what has been called the Exclusive Pleading Rule and the Potentiality Rule. *See Town Crier,* 721 F.Supp. at 102 & n. 12. Under the Exclusive Pleading Rule, an insurer's duty to defend is determined solely by the claims asserted in the pleadings. *See id.* (citing *Western World Ins. v. Harford Mut. Ins. Co.,* 784 F.2d 558, 562 (4th Cir. 1986)). Under the Potentiality Rule, an insurer's duty to defend is triggered if there is any "potentiality" that the allegations in the pleadings could state a claim that would be covered by the policy. *See id.* The hybrid Virginia rule states that if the complaint makes allegations that "may" be covered by the policy, the insurer has a duty to defend. *See id.* at 102 (citing *Ocean Accident & Guar. Corp. v. Washington Brick & Terra Cotta Co.,* 148 Va. 829, 139 S.E. 513, 515 (1927)). Thus, the Court should look only to the allegations in SM & A's Amended Complaint to determine if the Policy provided coverage for Solers. *See Travelers Indemnity Co.*

*v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978).

Under the Hartford Policy, Hartford had a duty to defend Solers only if SM & A's Amended Complaint claimed an "advertising injury." The Policy defines "advertising injury" as follows:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's rights of privacy;

c. Misappropriation of advertising ideas or styles of doing business; or

d. Infringement of copyright, title or slogan.

(Policy ¶ G. 1.) However, the Policy further provided that Hartford's duty to defend on behalf of Solers was triggered only if the complaint against Solers alleged " 'advertising injury' caused by an offense committed in the course of advertising [Solers'] goods, products or services." (Policy ¶ A.1.b(2)(b).) Therefore, there is a multistep inquiry to determine whether Hartford had a duty to defend Solers against SM & A's claims.

The parties agree that the Court should use a three-part test to determine whether the Policy covers the allegations made by SM & A; the Court should determine: (1) whether the insured was engaged in advertising; (2) whether the insured's alleged conduct was one of the offenses enumerated by the policy as giving rise to an advertising injury; and (3) whether the injury arose from an offense committed during the policy period and in the course of the advertising activity. *See, e.g., R.L.*

*Chaides Constr.,* 847 F.Supp. at 1455 (Def. Mot. at 10, Pl. Mot. at 14.). Because the Court finds that Solers was not engaged in advertising when it allegedly committed offenses against SM & A, the Court need not address the second and third parts of the test.

 The parties disagree as to whether Solers is covered under the policy for an "offense committed in the course of advertising" because there is a dispute about the definition of the term "advertising." The word is not defined in the Policy. General rules of contract interpretation, and specifically insurance contract interpretation, require that "advertising" be given its plain and ordinary meaning here. *See Sear,* 102 F.3d at 895 (stating that the court must give the "unambiguous" term "advertising" its plain, ordinary because it was not defined in the insurance policy); *Lower Chesapeake Assocs.,* 532 S.E.2d at 330 (stating that because the term "collapse" was not defined in the insurance policy, the term had to be given its ordinary and accepted meaning); *Select Design,* 674 A.2d at 800 ("Disputed terms [in a policy] should be read according to their plain, ordinary and popular meaning."); *Scottsdale Ins.,* 397 S.E.2d at 107 (using the Black's Law Dictionary definition of "leased premises" in construing the terms of a lease). Only where a contract term is ambiguous should the court go beyond the plain meaning of the contract's language.

 The Court holds that the term "advertising" is not ambiguous. A term is ambiguous if, to a reasonably prudent person, the term is susceptible of more than one meaning. *See, e.g., Monumental Life,* 617 A.2d at 1173; *Peerless Lighting Corp.,* 98 Cal.Rptr.2d at 759. A term is not ambiguous simply because parties disagree about the meaning. Nor is a term ambiguous simply because courts have reached different conclusions as to its definition.

*See Select Design,* 674 A.2d at 802 (holding that "advertising" is not ambiguous, despite disagreement in the courts); *Peerless Ins. Co. v. Wells,* 154 Vt. 491, 580 A.2d 485, 488 (1990) (finding that ambiguity is not established by disagreement between courts where alternative definition of term is based on forced reading of policy language). Different courts have examined the meaning of "advertising" in varying contexts; the differences in context have led to differences in application. This does not mean that the word itself does not carry a plain and ordinary meaning. *See Select Design,* 674 A.2d at 802; *Peerless Ins. Co.,* 580 A.2d at 488.

Generally, a lay person would not read the term "advertising" as including an effort to sell, through a competitive bidding process, a product that is specifically tailored for a single customer to meet the needs of a specific project-which is what occurred in this case. *See Peerless Lighting Co.,* 98 Cal.Rptr.2d at 763. The Court should not strain to create an ambiguity in the term where none exists. *See Peerless Lighting Co.,* 98 Cal.Rptr.2d at 759. Although there is a split in authority, a large number of courts have accepted a common definition of "advertising." *See, e.g., id.* 98 Cal.Rptr.2d at 760–61 (stating that the narrower, "public dissemination" definition of the term "advertising" is the majority view); *Select Design,* 674 A.2d at 801–02 (same); *Sear,* 102 F.3d at 894 (interpreting Indiana law and finding that "advertising" is not an ambiguous term). *But see Star Techs.,* 935 F.Supp. at 1114 (stating that the broader, non-public solicitation definition of the term "advertising" is the majority view); *Zurich Ins. Co. v. Sunclipse, Inc.,* 85 F.Supp.2d 842, 853 (N.D.Ill.2000) (applying California law) (stating that broader view of "advertising" is the majority view); *Farmington Casualty Co.,* 996 F.Supp. at 700 (stating that it is uncertain which is the majority and which is the

minority view); *Amway Distrib. Benefits Ass'n,* 990 F.Supp. at 945 n. 6 (same).

This Court adopts the narrow definition of "advertising." Neither Virginia courts nor the Fourth Circuit have defined "advertising." *See Liberty Life Ins. Co.,* 857 F.2d at 950 (stating with regard to the definition of advertising, "we express no opinion upon that question"). However, several other jurisdictions have found "advertising" to have a plain, ordinary meaning. For example, the Seventh Circuit in *Erie Ins. Group v. Sear* has stated that actions taken " 'in the course of advertising' must involve actual, affirmative, self-promotion of the actor's goods or services." 102 F.3d at 894. The *Sear* court further asserted that the clear majority of cases have found the term "advertising" to refer unambiguously to the widespread distribution of promotional material to the public at large, or at least to widely disseminated solicitation or promotion. This view excludes one-to-one solicitations from the definition. *See id.* at 894 n. 2, n. 4. A vast number of courts endorse this definition: *Select Design,* 674 A.2d at 800 (Vermont); *International Ins. Co. v. Florists' Mut. Ins. Co.,* 201 Ill.App.3d 428, 147 Ill. Dec. 7, 559 N.E.2d 7, 10 (1990) (Illinois); *Playboy Enters.,* 769 F.2d at 428 (7th Cir.interpreting Illinois law); *MGM, Inc.,* 839 P.2d at 540 (1992) (Kansas); *Monumental Life,* 617 A.2d at 1173–74 (Maryland); *Smartfoods, Inc. v. Northbrook Property & Cas. Co.,* 35 Mass.App.Ct. 239, 618 N.E.2d 1365, 1368 (1993) (Massachusetts); *Fox Chem. Co. v. Great Am. Ins. Co.,* 264 N.W.2d 385, 386 (Minn.1978) (Minnesota); and *First Bank & Trust Co. v. New Hampshire Ins. Group,* 124 N.H. 417, 469 A.2d 1367, 1368 (1983) (New Hampshire). *But see Sentex Sys. Inc.,* 882 F.Supp. at 939 (basing its decision on *John Deere Ins.*); *John Deere Ins. Co. v. Shamrock Indus., Inc.,* 696 F.Supp. 434, 439

794

(D.Minn.1988)[1]; *Star Techs.*, 935 F.Supp. at 1114.

The submission of proposals to Draper and Boeing is the only activity alleged by SM & A that Solers argues entitles Solers to insurance defense and indemnity coverage for an offense "committed in the course of advertising." Despite the ordinary definition of "advertising" as an activity directed at the public at large, Solers argues that its submission of proposals is advertising because the proposals are promotional. The Court finds that the proposals demonstrate a means of solicitation tailored to convince the recipient of the proposal that the proposing party is the best party to whom to give the work. (Pl. Mot., Ex. 3, Tab D: Boeing Proposal.) The proposals contain numerous assertions that comprise promotional statements, including:

> 'Solers Software, Inc. . . . is composed of seasoned engineers and managers. The word Solers is Latin meaning "ingenious, adroit, skillful.'' The foundation of the corporation is based on the skillful teamwork ethic that permeates our management approach used to accomplish ingenious technical solutions for our customers. Solers embraces a business philosophy which ensures that quality, responsive technical solutions to difficult problems are provided on time and within budget.
>
> \*Our personnel have years of direct program experience . . . .
>
> \*As staff of the Software Integrated Product Team (IPT), we provided software support for operational issues related to the broadcast scheduling and transport software deployed in JBS.

> \*During JWID 97, NIMA demonstration 045, successfully integrated the WAATS technology with the GBS transport services to provide assured delivery of information products to the WarFighter.
>
> \*As one of the primary authors of software operating in JBS today, Solers software engineers have amassed a significant amount of critical insight to the technical underpinnings of the operational system.
>
> \*Solers is a multi-disciplined engineering firm. Solers will leverage this diverse experience to provide responsive and cost effective solutions to the more difficult software and network engineering requirements of the JBS Program. Today, more than half of the current JBS configuration managed UNIX software baseline and the most of the Windows NT software baseline was originally authored by Solers engineers.
>
> \*The Solers engineers will continue to provide responsive software changes . . . . Our contributions are as a provider of software and communications engineering expertise in Broadcast Management, [etc.]

(*Id.* §§ 4.0, 1.0, 2.3, 3.0.) The proposal's statements are not technical specifications or bland recitations of the proponent's projected success in achieving the job task. The proposals include statements laced generously with adjectives and superlatives about the proponent's past successes, experience, proficiency, expertise, and job strategy. Clearly the proposals are more than price quotes and data specifications. The Court finds that the proposals are promotional. However, the Court further finds that a proposal does not constitute advertising because "[a] proposal to a par-

---

1. This case has been rejected by most courts as poorly reasoned. *See, e.g., Select Design,* 674 A.2d at 802; *Smartfoods,* 618 N.E.2d at 1368. The *John Deere Ins.* court even stated that its finding that one-to-one solicitation constituted advertising "seems to stretch the meaning of advertising." 696 F.Supp. at 440.

ticular company to do business together does not conform to ordinary notions of calling to the attention of the public the merits of a product." *Smartfoods,* 618 N.E.2d at 1368; *see also Select Design,* 674 A.2d at 803 (holding that a company's solicitation of its competitors customers did not constitute "advertising"). The proposals are more appropriately characterized as "solicitations," rather than advertisements.

Advertising and solicitation are mutually exclusive. *See Monumental Life,* 617 A.2d at 1173; *Select Design,* 674 A.2d at 802 (declining to accept the argument that "'solicitation' constitutes 'advertising,'" clarifying that advertising can be done as a means of solicitation, or a solicitous statement can be used in advertising, but that they were not co-extensive) (citing BLACK'S LAW DICTIONARY 50 (5th ed.1979)). Advertising and solicitation differ because advertising must be of a public nature. *See Monumental Life,* 617 A.2d at 1173–74. Solers publishes its proposals to a single customer at one time; therefore, the submission of proposals constitutes solicitation.

Accordingly, the Court holds that Solers' solicitations do not qualify as "advertising" for the purposes of invoking Hartford's duty to defend or indemnify under the Policy. Solers' submission of proposals is not covered by the Policy because such submissions were not "widespread distribution of promotional material to the public at large." *Playboy Enters.,* 769 F.2d at 428–29; *see Sear,* 102 F.3d at 894–95; *Monumental Life,* 617 A.2d at 1174; *MGM, Inc.,* 839 P.2d at 540. Instead, the bid proposals were one-to-one offers setting forth plans of how Solers could pro-

vide Draper and Boeing a service, and at what price. (Def. Ex. 11: Technical Proposal Instructions; App. in Support of Pl. Mot for Summ. J., Ex. 3, Tabs D & E: Boeing and Draper Proposals, respectively.)

Solers argues that the Court must find that the proposals constitute advertising because to hold otherwise on the grounds that the proposals are not directed at the public at large would be to hold that companies with small, but well-defined markets cannot, as a matter of law, engage in advertising. *See Farmington Casualty Co.,* 996 F.Supp. at 701. However, even for companies with small markets, the Court must examine advertising in the context of the overall universe of customers to whom an advertising communication may be addressed.[2] *See Peerless Lighting Corp.,* 98 Cal.Rptr.2d at 762–63. Where a promotional communication is addressed to a small audience, but that audience nonetheless comprises all or a significant number of the promoter's client base, the advertising activity requirement is met. *See New Hampshire Ins. Co. v. Foxfire, Inc.,* 820 F.Supp. 489, 494 (N.D.Cal.1993), *cited in Peerless Lighting Corp.,* 98 Cal.Rptr.2d at 762–63; *Farmington Casuality Co.,* 996 F.Supp. at 701. Solers' customer base is comprised of federal agencies and their contractors. However, Solers did not submit its proposals to a large number of agencies or contractors. Here, Solers' submission of proposals does not satisfy the advertising requirement because Solers did not submit proposals to a broad customer base, or a significant part of its customer base; the Boeing and Draper proposals were tailored to the single com-

---

**2.** Of course, small businesses are not limited to insurance coverage for claims based in "advertising injury" for the protection of their profession. Small businesses may obtain broad coverage by purchasing several forms of insurance, including coverage for errors and omissions liability, directors and officers liability, and completed operations and products liability. *Cf. Peerless Lighting Corp.,* 98 Cal.Rptr.2d at 764 (citation omitted).

panies to which Solers submitted them. *See Foxfire, Inc.*, 820 F.Supp. at 494; *Farmington Casualty Co.*, 996 F.Supp. at 701. This Court holds that "[a] definition that would stretch 'advertising' to include solicitation of a single customer as it occurred in this case is not within the insured's objectively reasonable expectations." *Peerless Lighting Corp.*, 98 Cal. Rptr.2d at 763–64.

## IV. CONCLUSION

In sum, the Court finds that Solers' submission of proposals on a one-to-one basis does not rise to the level of advertising activity. Therefore, SM & A's complaint against Solers did not claim an injury for a Solers offense "committed in the course of advertising." Consequently, Solers is not covered under the Hartford Policy. Thus, Hartford had no duty to defend Solers in SM & A's suit, and Summary judgment for Hartford is appropriate. Accordingly, it is hereby

ORDERED that Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment is GRANTED. Therefore, Judgment is entered in favor of Hartford. It is further

ORDERED that Plaintiff Solers, Inc.'s Cross Motion for Summary Judgment is DENIED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.