JOHN M. ARRUDA *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD.

No. 88-P-1248.

Bristol. December 12, 1989. - March 13, 1990.

Present: BROWN, DREBEN, & JACOBS, JJ.

*Public Employment,* Forfeiture of retirement benefits. *Words,* "Misappropriation of funds."

The term "misappropriation of funds" as used in G. L. c. 32, § 15 (1), includes a housing authority employee's approving excess payments of the authority's funds to a contractor in order to provide kickbacks to the employee and others. [368-369]

In an action seeking review of a determination by the Contributory Retirement Appeal Board, there was no merit to the plaintiff's contention that the board's decision was not supported by substantial evidence. [369-370]

CIVIL ACTION commenced in the Superior Court Department on December 12, 1985.

The case was heard by *Chris Byron,* J.

*Jeffrey S. Entin* for the plaintiff.

*Daniel E. Dilorati,* Assistant Attorney General, for Contributory Retirement Appeal Board.

DREBEN, J. The primary question before us is the construction of the term "misappropriation of funds" as used in G. L. c. 32, § 15(1).[1] Does the term include excess payments approved by the plaintiff and charged to his employer, the

[1]As appearing in St. 1945, c. 658, § 1, G. L. c. 32, § 15(1), provides in relevant part: "Any member who has been charged with the misappropriation of funds or property of any governmental unit in which or by which he is employed or was employed at the time of his retirement . . . shall be granted a hearing by the board . . . . If the board after the hearing finds the charges to be true, such member shall forfeit all rights under sections one to twenty-eight inclusive to a retirement allowance or to a return of his accumulated total deductions for himself and for his beneficiary, or to

Fall River Housing Authority (FRHA), in order to provide kickbacks to himself and others? The Contributory Retirement Appeal Board (CRAB) and two judges of the Superior Court held that it did.[2] We also agree that the plaintiff has misappropriated funds within the meaning of G. L. c. 32, § 15(1), and that CRAB's determination of the amount misappropriated was supported by substantial evidence.

The following facts were undisputed. The plaintiff was an employee of FRHA for sixteen years until his resignation on March 31, 1980. From 1977 through 1980, he was executive director of the authority and its contracting officer. While employed by the authority, and in his previous positions of mayor of Fall River (eight years) and as a State tax examiner (twelve years), the plaintiff was a member of the contributory retirement system. He applied for retirement benefits on March 27, 1980, and his application was approved by the retirement board of Fall River.

In August, 1981, the plaintiff was indicted on three counts, and in February, 1982, a Federal jury found him guilty on two of these counts, namely, conspiracy under 18 U.S.C. § 371 (1976), and violating the Travel Act, 18 U.S.C.

both, to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board."

[2]The matter was presented twice to the Superior Court. After an initial decision by CRAB holding that the plaintiff's misconduct in public office disqualified him from the receipt of a pension, a judge of the Superior Court, on the plaintiff's appeal, agreed that the misconduct constituted misappropriation. He remanded the matter to CRAB for findings on the ground that a determination of the amount misappropriated was necessary to ascertain the benefits, if any, to which the plaintiff was entitled. See G. L. c. 32, § 15(1), note 1, *supra*. The present appeal is from an affirmance of CRAB's decision after remand.

General Laws c. 32, § 15(3A) and § 15(4), are not involved in this appeal. The first judge found that paragraph (3A) of G. L. c. 32, § 15, inserted by St. 1982, c. 630, § 20, was inapplicable to the plaintiff, and, in this appeal, CRAB does not argue otherwise. See *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 685 n.4 (1986). Paragraph (4) of G. L. c. 32, § 15, which precludes payment of a retirement allowance to an employee "after final conviction of a criminal offense involving violation of the laws applicable to his office or position," was inserted by St. 1987, c. 697, § 47, and, by § 135, made applicable only to criminal offenses committed on or after its effective date, January 12, 1988.

§ 1952 (1976), by reason of bribery in violation of G. L. c. 268A, § 2. The convictions were affirmed. *United States* v. *Arruda,* 715 F.2d 671 (1st Cir. 1983).

Shortly after the plaintiff's indictment in August, 1981, the retirement board of Fall River suspended payment of his retirement allowance. The plaintiff appealed to CRAB, which held that he was disqualified to receive a pension. On his appeal to the Superior Court, the matter was remanded for findings as to the amount misappropriated and the costs of the investigation. See note 2, *supra.* On remand, CRAB found that $155,852 had been misappropriated.

1. *Misappropriation of funds.* The plaintiff contends that participation in a scheme of bribery and kickbacks from a *contractor* is not covered by the term "misappropriate," because he did not take money from FRHA and apply *"that"* money to an illegal purpose or appropriate it to his own use. "A statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language . . . ." *Commonwealth* v. *Galvin,* 388 Mass. 326, 328 (1983) (citations omitted). *Commonwealth* v. *Rondeau,* 27 Mass. App. Ct. 55, 59 (1989). The ordinary dictionary definitions refute the plaintiff's narrow construction.[3]

The American Heritage Dictionary 838 (1976) defines "misappropriate" as follows: "1.a. To appropriate wrongly. b. To appropriate dishonestly for one's own use; embezzle. 2. To use for illegal purposes." In Webster's Third New International Dictionary 1442 (1971), the word is defined as: "1a: to apply to illegal purposes . . . b: to appropriate dishonestly for one's own use: embezzle . . . 2: to appropriate wrongly or misapply in use . . . ." The plaintiff's restricted construction is specifically rejected in Black's Law Dictionary 901 (5th ed.

---

[3]In *Collatos* v. *Boston Retirement Bd.,* 396 Mass. 684, 686 (1986), the court, in considering the application of G. L. c. 32, § 15(3A), stated: "A statute designed to enforce the law by punishing offenders, rather than simply by enforcing restitution to those damaged, is in the nature of a penal statute." We need not consider whether § 15(1) is a penal statute because, in our view, the ordinary meaning of "misappropriation" brings the plaintiff within its ambit.

1979), which defines misappropriation as: "The act of misappropriating or turning to a wrong purpose; wrong appropriation; a term which does not necessarily mean peculation, although it may mean that . . ."[4]

These definitions of "misappropriate" clearly cover the plaintiff's actions in approving excess payments to a contractor in order to provide kickbacks to himself and others. The funds of FRHA were wrongly appropriated and misapplied.

2. *Amounts misappropriated.* The plaintiff also claims that the amounts found by CRAB to have been misappropriated were not supported by substantial evidence. Assuming, without deciding, that the plaintiff has made an argument sufficient to meet the requirements of Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we find his contentions without merit.

The transcripts of Arruda's trial in Federal court and the decision of the United States Court of Appeals for the First Circuit in affirming the convictions formed the basis of CRAB's decision. Under G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1, " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." The transcripts and the court decision meet that requirement. Cf. *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 313 (1986), and authorities there cited; Liacos, Massachusetts Evidence 272, 454-455 (5th ed. 1981). The testimony was subject to cross-examination by Arruda in the Federal proceedings where he had the same interest as in the case at bar to refute that testimony.

The amounts found by CRAB are supported. There was evidence: (1) that the contract of FRHA with a contractor, Parkway Windows Corporation (Parkway), was increased by $82,000 to allow a kickback to Parkway and to members of

---

[4]"Peculation" is defined in Black's Law Dictionary 1017-1018 (5th ed. 1979) as: "The unlawful appropriation, by a depositary of public funds, of the property of the government intrusted to his care, to his own use, or that of others. The fraudulent misappropriation by one to his own use of money or goods intrusted to his care."

FRHA, including the plaintiff; (2) that, as executive director, the plaintiff signed off on payment requisitions for Parkway, change order documents, and certificates of completion; (3) that a change order for Parkway of $31,421 was created in order to provide additional kickbacks and, if not for the kickback scheme, the change order would not have been approved by FRHA; (4) that, because Parkway did not perform properly, additional work was needed; (5) that, instead of Parkway undertaking to perform such work without cost, an inflated change order falsely written for different work was issued to another contractor to cover Parkway's failure; and (6) that the amount of the unnecessary change order was $25,000 and the other contractor was also to keep a painting allowance of $17,431, although "little" painting was to be done. The plaintiff complains that the amount used for actual painting, and hence properly spent, has not been shown. We consider this claim de minimis, and thus find support for CRAB's figures.

*Judgment affirmed.*