**SUPERFORMANCE INTERNATIONAL, INC., Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant.**

No. Civ.A. 4:01–CV–113.

United States District Court,
E.D. Virginia,
Newport News Division.

Filed: May 31, 2002.

Douglas E. Miller, Patten Wornom Hatten & Diamonstein, Newport News, VA, James A. Lowe, Gauntlett & Associates, Irvine, CA, for plaintiff.

Thomas B. Shuttleworth, II, Lisa Palmer O'Donnell, Shuttleworth Ruloff & Giordano, Virginia Beach, VA, Matthew W. Lee, Stacey A. Moffet, Eccleston and Wolf, Washington, DC, Richard W. Driscoll, Duff Law Firm, Fairfax, VA, for defendant.

## OPINION AND ORDER

FRIEDMAN, District Judge.

This matter is before the court on cross-motions for summary judgment. Plaintiff Superformance International, Inc. ("Superformance") brings this action against the defendant, Hartford Casualty Insurance Co. ("Hartford"). Superformance requests a declaratory judgment and alleges breach of contract claims against Hartford. Jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The motions have been fully briefed, and the court held a hearing on this matter on April 26, 2002. For the reasons that follow, Superformance's motion for summary judgment is **DENIED** and Hartford's motion for summary judgment is **GRANTED.**

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute about the scope of insurance coverage under an insurance policy issued by Hartford to Superformance. Superformance seeks reimbursement of defense costs incurred by it in a lawsuit pending in the United States District Court for the District of Massachusetts. The suit in Massachusetts alleges that Superformance, a company that produces replica automobiles of the Ford Cobra, infringed upon the trademark rights of Ford Motor Co. ("Ford") and Carroll Shelby, Carroll Shelby Licensing, Inc., Shelby American, Inc. (collectively: "Shelby").

## The Initial Complaint Against Superformance

On December 19, 2000, Shelby filed suit against Superformance in the United States District Court for the District of Massachusetts in a case captioned *Carroll Shelby, et al. v. Superformance International, Inc., d/b/a Superformance Complete Replicars,* U.S.D.C. (Mass.) Case No. 00–CV–12581 ("the Shelby complaint"). In its original complaint, Shelby alleges claims for infringement of federally registered trademarks under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) (Count III); trademark dilution under Massachusetts law, ch. 110B § 12 (Count IV); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count V); and unfair competition in violation of the Massachusetts Unfair Business Practices Act, ch. 93A, §§ 2, 11 (Count VI).

According to the Shelby complaint, Ford maintains a contractual agreement with Shelby under which Ford grants Shelby the exclusive worldwide license for the use of the Cobra and Cobra Snake Design for vintage automobiles created, designed, and made by Shelby. Under its agreement with Ford, Shelby advertises and sells automobiles and related products, including

Cobra roadsters and accessories, using the "Cobra" and "Shelby" trademarks. Shelby alleges that Superformance infringed upon their trademarked designs by Superformance's manufacture and marketing of Cobra motor vehicles, kit cars, parts and accessories for kit cars, and automotive parts and accessories with the Cobra mark. Shelby contends that Superformance markets and sells its infringing products, including through the use of an internet web site. The use of the infringing trademarks allegedly misleads prospective purchasers of the affiliation of Superformance with Shelby or Shelby's approval of plaintiff's goods. Shelby further alleges that Superformance diluted the value of Shelby's trademarks through its unauthorized use of the marks.

**The Policy**

On March 10, 2001, several months after Shelby filed its initial complaint, Superformance purchased a Commercial General Liability insurance policy from Hartford ("the Policy"). The Policy provided coverage from March 9, 2001 to March 9, 2002. Superformance invoked the Policy to cover the suit originally filed several months prior.

Coverage under the Policy is subject to the terms and conditions set forth therein, including all definitions and exclusions. Under the Policy, Hartford agreed to defend and indemnify Superformance in any suit seeking damages for, *inter alia,* "personal and advertising injury." Specifically, the Policy provides that Hartford:

> will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of . . . 'personal and advertising injury' to which this insurance applies. [Hartford] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Hartford] will have no duty to defend the insured

> against any 'suit' seeking damages for . . . 'personal and advertising injury' to which this insurance does not apply.

Pl.Ex. 1 at 1. The Policy *excludes* Hartford from coverage of any "personal and advertising injury:"

> (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
>
> \* \* \* \* \* \*
>
> (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement';
>
> \* \* \* \* \* \*
>
> (9) Arising out of the infringement of trademark, trade name, service mark, or other designation of origin or authenticity.

*Id.* at 8. The Policy defines "personal and advertising injury" in relevant part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:"

> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication of material that violates a person's rights of privacy; or
>
> f. Copying, in your 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement'. . . .

*Id.* at 20. In addition, the Policy defines "advertisement" as a "means of information or images that has the purpose of inducing the sale of goods, products or services through: (1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper; or any other publication that

is given widespread public distribution." *Id.* at 16. However, the Policy further states that "advertisement" does not "include the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products." *Id.* Finally, the Policy defines "advertising idea" as "any idea for an 'advertisement.' " *Id.* The parties dispute the meaning of virtually all of the Policy's applicable provisions and definitions.

### Subsequent Complaints Against Superformance

Superformance states that it does not seek recovery under the terms of Shelby's complaint filed December 19, 2000. Instead, Superformance invoked the Policy when Shelby filed an amended complaint after the inception of Hartford's policy coverage. Shelby's amended complaint includes the claims alleged in the original complaint with an additional claim for violation of import statutes. The facts contained in the amended complaint are virtually identical to the original complaint.

On November 21, 2001, Ford intervened in the lawsuit as a plaintiff against Superformance. Ford's intervening complaint was filed during the Hartford policy period. Both Shelby and Ford contend that they manufacture and sell hundreds of thousands (in the case of Ford, millions) of dollars worth of automobiles, automobile parts and accessories, and replica automobiles with the Cobra trademarks and the Cobra Snake Design. Ford contends that through the unauthorized use of the marks, Superformance misleads prospective purchasers that Ford is connected with or approves the products sold by Superformance.

The complaint filed by Ford ("Ford complaint") alleges infringement of federally registered trademarks under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1125(a) (Count II); federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) (Count III); trademark dilution under Massachusetts law, ch. 110B § 12 (Count IV); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count V); and unfair competition in violation of the Massachusetts Unfair Business Practices Act, ch. 93A §§ 2, 11 (Count VI).

On August 24, 2001, after service of Shelby's amended complaint, Superformance invoked the Policy and requested that Hartford defend the Shelby action. Hartford acknowledged Superformance's request on October 6, 2001 but later denied coverage. On October 29, 2001, Superformance filed suit in this court. On November 27, 2001, Superformance requested that Hartford defend the Ford complaint. Hartford again denied coverage. Both parties subsequently moved for summary judgment to determine whether Hartford has a duty to defend.

### *ANALYSIS*

### I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996); *see also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court may properly deny summary judgment when there is sufficient evidence favoring the nonmoving party that would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d

202 (1986). However, entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The court must further grant summary judgment where "the evidence is so one-sided that one party must prevail as a matter of law." *Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1120 (4th Cir. 1995) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## II. STANDARD FOR INTERPRETING INSURANCE CONTRACTS

█ The parties agree that there are no material issues of fact in dispute and that Virginia law controls the interpretation of the insurance policy. In determining whether an insurance carrier has a duty to defend, the court must review the policy language to determine the terms of coverage and the allegations in the underlying complaint to ascertain whether the action involves claims covered by the policy. *See Fuisz v. Selective Ins. Co. of America,* 61 F.3d 238, 242 (4th Cir.1995). Therefore, the court must decide whether to grant summary judgment by looking at the four corners of the Policy and the Shelby and Ford complaints. *Solers, Inc. v. Hartford Casualty Ins. Co.,* 146 F.Supp.2d 785, 791 (E.D.Va.2001). The terms of an insurance policy should be construed in light of their subject matter and a policy's words and phrases "should be given their natural and ordinary meaning as understood in the business world." *Id.* at 789 (quoting *London Guarantee & Acc. Co. v. C.B. White & Bros.,* 188 Va. 195, 49 S.E.2d 254, 259 (1948)). The court

must "read the terms of the policy as part of the document as a whole, not 'in isolation.'" *Gates, Hudson & Assoc., Inc., v. Federal Ins. Co.,* 141 F.3d 500, 502 (4th Cir.1997) (citations omitted).

█ When construing an insurance policy, Virginia courts follow a combination of the Exclusive Pleading Rule and the Potentiality Rule. *See Solers,* 146 F.Supp.2d at 791. "Under the Exclusive Pleading Rule, an insurer's duty to defend is determined solely by the claims asserted in the pleadings." *Id.* (citing *Western World Ins. v. Harford Mut. Ins. Co.,* 784 F.2d 558, 562 (4th Cir.1986)).[1] "Under the Potentiality Rule, an insurer's duty to defend is triggered if there is any 'potentiality' that the allegations in the pleadings could state a claim that would be covered by the policy" *Id.* Thus, the "insurer's obligation to defend is broader than its obligation to pay. The obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.,* 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990). An insurer is relieved of the duty to defend "only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life and Casualty Co.,* 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) (emphasis in original); *see also, Virginia Electric and Power Co. v. Northbrook Property and Casualty Ins. Co.,* 252 Va. 265, 268, 475 S.E.2d 264, 265–66 (1996). All insuring provisions are construed broadly and any ambiguity is construed liberally in favor of the insured, and strictly against the insurer. *See St. Paul*

---

1. Accordingly, the court will not consider the numerous advertisements and other literature attached to Superformance's briefs because these exhibits were not part of the Shelby or Ford complaint.

*Fire & Marine Ins. Co. v. Jacobson,* 48 F.3d 778, 781 (4th Cir.1995).

## III. EXCLUSIONS UNDER THE POLICY

There must be a qualifying offense that falls within the potential coverage of the Policy to trigger Hartford's duty to defend. Superformance spends considerable time piecing together disparate sentences in the Shelby and Ford complaints in an attempt to find an offense covered under the policy. However, any possible offense will not fall within the grant of coverage if the claim is subject to a relevant exclusion.

■■■ Under Virginia law, exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. *See Virginia Electric and Power Co.,* 475 S.E.2d at 266 (citing *Johnson v. Ins. Co. of North America,* 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986)). Reasonable exclusions in an insurance contract will be enforced, "but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *State Farm Mut. Auto. Ins. Co. v. Gandy,* 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). An ambiguity, if one exists, must be found on the face of the policy. *Nationwide Mut. Ins. Co. v. Wenger,* 222 Va. 263, 268, 278 S.E.2d 874, 877 (1981). Language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. *Lincoln National Life Ins. Co. v. Commonwealth Corrugated Container Corp.,* 229 Va. 132, 136–37, 327 S.E.2d 98, 101 (1985). Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it. *See Morrow Corp. v. Harleysville Mut. Ins. Co.,* 110 F.Supp.2d 441, 452 (E.D.Va.2000).

The court finds any potential claim precluded under the Policy's first publication exclusion. As stated above, the Policy provides coverage for any "personal and advertising injury" caused by Superformance. However, the Policy bars coverage for any "personal and advertising injury" arising out of "oral or written publication of material *whose first publication took place before the beginning of the policy period*" (emphasis added). In other words, the policy excludes coverage for any "personal and advertising injury" if the "first publication" of the offending advertisement was made prior to the beginning of coverage. Under the plain language of the exclusion, Hartford need not defend Superformance because the Policy did not begin until March 9, 2001, and Superformance was sued in Massachusetts on December 19, 2000, almost three months *before* the beginning of the policy period.

■■ Acknowledging the weakness of its position, Superformance states that is not requesting a defense under the terms of Shelby's original complaint. Instead, Superformance only seeks recovery for Shelby's amended complaint and Ford's complaint. Superformance argues the first publication exclusion does not apply because these two complaints were filed after the inception of the Policy. This argument elevates form over substance. Shelby's amended complaint alleges almost all of the exact same factual language and restates the first six counts verbatim. The amended complaint merely adds a related count and a few supporting factual allegations. The basis for the claims against Superformance, and the allegations regarding the "publishing" of its advertisements over the internet and other media, remain the same. The insignificant changes to Shelby's complaints cannot bring Superformance out of the first publi-

cation exclusion. Similarly, the Ford complaint often uses identical language to Shelby's original complaint and the gravamen of the two complaints are the same. Ford's complaint relies on the same facts as Shelby's original complaint; facts that clearly occurred before the beginning of Hartford's policy. The first publication exclusion thus applies to both Shelby's amended complaint and Ford's intervening complaint. *See Applied Bolting Tech. Prods., Inc. v. United States Fidelity & Guaranty Co.*, 942 F.Supp. 1029, 1035–37 (E.D.Pa.1996).

The cases cited by Superformance are inapplicable because each case involves a suit filed during or immediately after the insurance policy period. *See, e.g., Arnette Optic Illusions, Inc. v. ITT Hartford Group, Inc.*, 43 F.Supp.2d 1088, 1091 (C.D.Ca.1998) (construing claim served on September 14, 1995 with insurance policy effective April 10, 1992 through April 9, 1996). Superformance cites no case where a party becomes a defendant to a lawsuit and then attempts to insure itself *post hoc.* Thus, none of the cases relied upon by Superformance reflect the situation presented by this case.[2]

Superformance's suit against Hartford amounts to an attempt to obtain retroactive insurance. It seems evident that the first publication exclusion was inserted into the Policy to avoid precisely the situation presented in this case. Hartford clearly never intended to provide coverage for a lawsuit filed before the Policy commenced. In summary, Hartford need not defend an underlying allegation of "personal and advertising injury" because any such claim is precluded pursuant to the first publication exclusion.[3]

## IV. DUTY TO DEFEND UNDER THE POLICY

Assuming, *arguendo*, that Superformance's claim is not excluded under the first publication exclusion, Hartford will only have a duty to defend Superformance if the Shelby or Ford complaint alleges an offense potentially covered by the Policy. A review of the Shelby and Ford complaints reveals that none of the grounds for relief asserted in the complaints are explicitly covered by the Policy. Instead, the facts and claims asserted by the Ford and Shelby complaints overwhelmingly relate to trademark violations. Superformance concedes that Hartford's policy excludes all allegations of trademark infringement. However, Superformance contends that specific, discrete facts alleged in the complaints potentially state claims covered by the Policy. According to Superformance, the complaints potentially allege claims for "personal and advertising injury" under the Policy. In their briefs and arguments before the court, the parties separate "advertising" injury and "personal" injury

---

**2.** The court also rejects Superformance's numerous alternative arguments on this issue, such as "unique and distinct" advertisements occurred during the policy period or the first publication exclusion only applies to "advertising injuries" arising from libel, slander, or invasion of privacy. These arguments ignore the plain meaning of the exclusion's unambiguous terms. *See Applied Bolting*, 942 F.Supp. at 1036–37 (holding that "[i]t is irrelevant that later publications, made after the policy became effective, also caused 'advertising injury' or increased the damages").

**3.** Hartford further argues that the claims are excluded because all claims arose "out of the infringement of trademark, trade name, service mark or other designation of origin or authenticity." Because the court concludes that the claims are excluded under the prior publication exclusion, it is unnecessary to decide whether the claims are further excluded under a different provision.

into two different inquiries and the court will follow this analysis.

## A. Advertising Injury

Superformance first contends the allegations contained in the Shelby litigation assert that Superformance engaged in advertising and caused advertising injury. Hartford's policy provides general protection for any "advertising injury." In the definition section of the Policy, Hartford lists numerous offenses that constitute an "advertising injury." Superformance primarily argues that the Shelby and Ford complaints allege facts that potentially state a claim for the covered offense of "copying in your advertisement, a person's or organization's advertising idea or style of advertisement."

Both parties agree that courts apply a three-part test in determining whether coverage exists for an "advertising injury." The court should determine: "(1) whether the insured was engaged in advertising; (2) whether the insured's alleged conduct was one of the offenses enumerated by the policy as giving rise to an advertising injury; and (3) whether the injury arose from an offense committed during the policy period and in the course of the advertising activity." *Solers,* 146 F.Supp.2d at 792. The court will address each factor below.

### 1. *Whether the insured was engaged in advertising*

As stated above, Hartford defines "advertisement" as "a dissemination of information or images that has the purpose of inducing the sale of goods, products or services through ... [any] publication that is given widespread public distribution." In Shelby's amended complaint, Shelby alleges that Superformance "advertises [and] markets" infringing products. *See* Shelby Amend.Compl. ¶ 19. Shelby further alleges that Superformance uses an internet site to advertise its infringing products. *Id.* at ¶ 20, 36. Similarly, Ford states that Superformance promotes its infringing products through a promotional video and advertises through its internet site, as well as in national publications and other media. *See* Ford Compl. ¶ 11, 12, 17, 28. Thus, the Shelby and Ford complaints clearly allege that Superformance engaged in advertising and Superformance satisfies the first prong.[4]

### 2. *Whether the insured's alleged conduct was one of the offenses enumerated by the Policy as giving rise to an advertising injury*

Superformance contends the facts contained within the Shelby and Ford complaints establish three separate grounds that give rise to an advertising injury under the Policy. Specifically, Superformance alleges the facts potentially support claims for trade dress infringement, common law misappropriation and false advertising. For the following reasons, the court finds the facts alleged in the Shelby and Ford complaints cannot support any claim for advertising injury.

#### a. *Trade Dress Infringement*

Superformance argues that the facts in the Shelby and Ford complaints can be

---

4. Hartford argues that there must be a "causal connection between 'advertising activities' and 'advertising injury' " act, even if advertised, falls under the grant of coverage "merely because it was advertised." *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc.,* 824 F.Supp. 583, 586 (E.D.Va. 1993) (interpreting California law). Assuming that Virginia law requires a causal connection, the court finds that Superformance has met the causal requirement. The Shelby and Ford complaints clearly allege that Superformance engaged in advertising activities and such advertisements injured Shelby and Ford.

construed to allege a claim of trade dress infringement because the claims allege liability for Superformance's infringement of the shape and design of the Cobra vehicle in its advertising on the internet and other media.[5] Superformance further argues that the Cobra replica itself looks so similar to Shelby's replica that it constitutes "advertising" under the insurance contract.

The parties allot the majority of their arguments on this topic to whether the Policy's coverage of "copying ... a person's or organization's 'advertising idea' or style of advertisement" includes coverage for trade dress infringement. Superformance argues that the disputed provision is similar to a provision in standard insurance contracts that covers "misappropriation of advertising ideas or style of doing business." Superformance correctly notes that numerous courts have concluded that trade dress infringement is included within the offense of "misappropriation of advertising ideas or style of doing business." *See Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins.*, 165 F.Supp.2d 1332, 1337–38 (S.D.Fla.2001) (citing cases). Superformance argues that the long line of cases holding that claims of trade dress infringement fall within the offense of "misappropriation of advertising ideas or style of doing business" should be applied to the present case.

In response, Hartford argues that the offense of "misappropriation of advertising ideas or style of doing business" should not apply to trade dress infringement under

the reasoning of *Advance Watch Co. v. Kemper National Ins. Co.*, 99 F.3d 795, 800–06 (6th Cir.1996). *Advance Watch* held that "misappropriation" exists as a separate tort and the phrase "misappropriation of advertising ideas or style of doing business ... refer[s] to a category of actionable conduct separate from trademark and trade dress infringement." *Id.* at 802. Finally, Hartford argues that the "misappropriation" jurisprudence is inapplicable to the present case because the Policy employs significantly different language.

The court finds that the offense of trade dress infringement is properly contained within the Policy's coverage for "copying in your advertisement, a person's or organization's advertising idea or style of advertisement." None of the cases addressing the exact policy language in this case are directly on point. *See Hosel & Anderson, Inc. v. ZV II, Inc.*, No. 00 Civ. 6957, 2001 WL 392229, at *2 (S.D.N.Y. Mar.21, 2001) (unpublished) (holding that "[t]he product itself is not an advertisement within the meaning of [Hartford's] policy"). However, a recent opinion by the Second Circuit addressed extremely similar language and found that "copying a person's or organization's advertising ideas or advertising style" includes trade dress infringement. *See R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 245 (2d Cir.2002). The *Bigelow* court expressly rejected the reasoning of the *Advance Watch* case relied upon by Hartford and held that "[t]he term 'copying' does not suggest a traditional tort that can so readi-

---

**5.** "Trade dress" is a technical term that refers to a product's "total image and overall appearance," including its "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Ashley Furniture Indus., Inc. v. Sangiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir.1999). Trade dress normally refers to the packaging or labeling of goods, but the design of the product itself may also constitute protectable trade dress.

*See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 1342, 146 L.Ed.2d 182 (2000). Trade dress is protected under section 43(a) of the Lanham Act, which prohibits any person from using a term, name, symbol or device, or any combination thereof, which is likely to confuse, mistake or deceive as to the manufacturer, origin or description of a good or service. 15 U.S.C. § 1125.

ly be considered distinct from trademark or trade dress infringement." *Id.* at 247. This court agrees with the reasoning in *Bigelow* and holds that Hartford's policy language provides coverage for trade dress infringement. Accordingly, if the facts in the Shelby and Ford complaints potentially allege a claim for trade dress infringement, Superformance will satisfy the second prong of an "advertising injury."

To prove a case of trade dress infringement, a party must demonstrate that "(1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning." *Ashley Furniture Indus., Inc.*, 187 F.3d at 368. Both the Shelby and Ford complaints allege that Superformance has "intended to cause, has caused and is likely to continue to cause confusion...." *See* Shelby Amend.Compl. at ¶ 25; Ford Compl. at 17. Similarly, both complaints state that their trademarks and designs are inherently distinctive. *See* Shelby Amend.Compl at ¶ 5, 15, 18; Ford Compl. at ¶ 8. Thus, the Shelby and Ford complaints satisfy the second and third requirements for trade dress infringement. The complaints, however, do not allege that their trade dress is primarily non-functional. Superformance did not refer to the non-functional requirement in its briefs and an independent re-

view of the complaints reveals no facts that could possibly support such an allegation. Accordingly, the court holds that the Shelby and Ford complaints fail to state facts sufficient to support a claim of trade dress infringement.

b. *Misappropriation*

Superformance argues in the alternative that the facts in the Shelby and Ford complaints potentially allege a claim for "common law misappropriation." This argument is without merit. Superformance asserts that the elements of common law misappropriation are (1) plaintiff made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that "thing" as a kind of property right; (2) defendant appropriated the "thing" at little or no cost, such that the court can characterize defendant's actions as "reaping where it has not sown;" and (3) defendant injured the plaintiff by the misappropriation. *See* Pl.Opp.Br. at 21. Superformance cites no Virginia or Massachusetts case for its misappropriation claim and it appears neither state has recognized such a cause of action.[6] Further, common law misappropriation is an inappropriate remedy in this case because one cannot "misappropriate" another's trade symbols or designs.[7] Finally, the facts contained in the Shelby and Ford com-

---

**6.** Both states recognize misappropriation of trade secrets, *Newport News Industrial v. Dynamic Testing, Inc.*, 130 F.Supp.2d 745, 750–51 (E.D.Va.2001); *Alder Food Dists., Inc. v. Keating*, No. 0000748, 2000 WL 33170823, at *6 (Mass.Super. Jun.6, 2000), and misappropriation of funds, *Gwaltney v. Commonwealth*, 19 Va.App. 468, 474, 452 S.E.2d 687, 691 (1995); *Arruda v. Contributory Retirement Appeal Bd.*, 28 Mass.App.Ct. 366, 368, 551 N.E.2d 537, 538 (1990), but neither offense applies to this case.

**7.** Superformance relies on J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

*Competition* § 10.51 (4th ed.1996) for its misappropriation claim. This treatise states in a related section that "[t]he misappropriation doctrine cannot be used in ordinary trademark infringement cases as a shortcut around the trademark law's standards of protection. That is, one cannot dispense with the carefully constructed requirements for trademark protection by blithely claiming that defendant 'misappropriated' some symbol of plaintiff which may or may not be capable of trademark protection ... [t]hus, it is a misnomer to talk of 'misappropriation' of trademarks or trade symbols of any type." *Id.* at 10:72.

plaints do not potentially allege the second element of the misappropriation offense. Accordingly, Superformance fails to establish the existence of a claim for common law misappropriation.

### c. *False Advertising*

At oral argument, Superformance asserted that the Shelby and Ford complaints allege a claim for false advertising. In order to establish a false advertising claim under the Lanham Act, the plaintiff must show that the defendant "(1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, (3) on a subject material to the decision to purchase the goods, (4) touting goods entering interstate commerce, (5) and that results in actual or probable injury to the plaintiff." *X–IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F.Supp.2d 577, 625 (E.D.Va.2001). The Shelby and Ford complaints sufficiently allege facts to support this offense. For example, Shelby's complaint alleges that Superformance made misleading statements by suggesting "that the vehicles produced by Superformance are equivalent to the vehicles produced by Shelby, when in fact they are not." Shelby Amend. Compl. at ¶ 57. Considering that ambiguities are construed liberally in favor of the insured, the court finds that the remaining elements are sufficiently alleged and the complaints potentially allege a claim for false advertisement.

While the facts support a claim for false advertisement, this does not end the inquiry. Rather, false advertisement must be covered as an "advertising injury" under the Policy. The Policy does not explicitly provide coverage for false advertising and the claim cannot be read into any of the covered offenses. Thus, there is no coverage for false advertisement based

upon the plain meaning of the Policy's terms. *See Applied Bolting*, 942 F.Supp. at 1031–32 (holding false advertising not covered under similar policy language).

Moreover, the offense of false advertisement will not fall within the grant of coverage if the claim is subject to a relevant exclusion. In this case, the Policy excludes all "personal and advertising injury ... arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your advertisement." The court finds that this exclusion was clearly intended to exclude claims for false advertising. *See Bigelow*, 287 F.3d at 246 (holding false advertising claim excluded by similar language). Accordingly, the Policy specifically excludes coverage for false advertising and this offense cannot support a duty to defend.

### 3. *Whether the injury arose from an offense committed during the policy period and in the course of the advertising activity*

Finally, coverage will only exist under the Policy if the offense was committed during the policy period. As the court previously explained, the facts and claims alleged in the Shelby and Ford complaints arose prior to the beginning of Hartford's policy. Thus, Superformance cannot meet this third factor and cannot establish an advertising injury. *See Applied Bolting*, 942 F.Supp. at 1035–38.

## B. Personal Injury

Superformance next contends that the allegations contained in the Shelby litigation assert that Superformance caused "personal" injury under the Policy. Superformance argues that the Shelby and Ford complaints allege facts that potentially state a claim for libel, disparagement

and violation of privacy rights. Each offense is discussed below.

### 1. *Libel*

 Hartford's policy provides "personal injury" coverage for the "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Pl.Ex. 1 at 20. Superformance asserts that the Shelby and Ford complaints potentially allege a claim for libel against Carroll Shelby in his individual capacity.[8] To establish a claim for libel, a plaintiff must prove: (1) publication about the plaintiff; (2) an actionable statement; and (3) the requisite intent. *Chapin v. Greve*, 787 F.Supp. 557, 562 (E.D.Va.1992), *aff'd sub nom, Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087 (4th Cir.1993); *see also, Ditton v. Legal Times*, 947 F.Supp. 227, 229–230 (E.D.Va.1996).[9] Here, the dispositive issue is whether the Shelby or Ford complaint alleges facts that potentially constitute an actionable statement. To be actionable, a statement must be false and defamatory. *Chapin*, 787 F.Supp. at 562; *Kidwell v. Sheetz, Inc.*, 982 F.Supp. 1177, 1187 (W.D.Va. 1997). Virginia law "requires that the potential defamatory meaning of statements be considered in light of the plain and ordinary meaning of the words used in context as the community would naturally understand them." *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir.1999). Statements may be defamatory by inference or implication. *Id.* However, "the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation." *Chapin*, 787 F.Supp. at 563 (quoting *Carwile v. Richmond Newspapers*, 196 Va. 1, 82 S.E.2d 588, 591–92 (1954)).

 "To defame a person is to attack his or her good name, thereby injuring his or her reputation." *Chapin*, 787 F.Supp. at 562. Not every unflattering or unwelcome remark will sustain a libel suit. In order to be defamatory, a statement must "make the plaintiff appear odious, infamous, or ridiculous." *Id.* In this case, the Shelby and Ford complaints do not specifically allege a libelous or defamatory statement. Instead, the complaints largely concern the "acts" of Superformance or the allegedly unlawful "use" of the marks. For its example of a defamatory statement, Superformance points to the allegation "[i]n advertising and promoting its vehicles as 'replicas' of Shelby vehicles, Superformance improperly suggests to its customers and potential customers that the vehicles produced by Superformance are equivalent to the vehicles produced by Shelby, when in fact they are not." Shelby Amend.Compl. at ¶ 57. Ascribing to these words their plain meaning, this alleged "statement" does not rise to libel. The allegation merely states that Super-

---

**8.** In oral argument, Superformance clarified that it was claiming libel only against Carroll Shelby and not the plaintiff corporations.

**9.** Superformance and Hartford both cite Virginia, not Massachusetts, law to establish whether a claim for libel has been alleged. *See* Pl.Opp. at 9–10; Def. Reply at 7. The court notes that in *Fuisz v. Selective Ins. Co. of America*, 61 F.3d 238 (4th Cir.1995), the Fourth Circuit applied Virginia law in a duty to defend case to determine whether a claim for defamation was properly alleged by the underlying complaint filed in the District of Columbia. *Id.* at 240–41. That court held that Virginia law "governs the substantive issues of the case." *Id.* at 241. Thus, this court will apply Virginia law to determine whether the facts potentially allege a cause of action for libel. In any event, the court examined Massachusetts law and finds that the result would be identical under the laws of that state. *See Cignetti v. Healy*, 89 F.Supp.2d 106, 126 (D.Mass.2000) (stating elements of libel in Massachusetts).

formance advertises its products to be "as good as" Shelby's products. In this sense, Shelby's products are held in high regard as a product worth emulating. Such a statement does not make Shelby appear "odious, infamous, or ridiculous." The court holds that the facts are clearly insufficient to potentially support a claim for libel.

### 2. *Disparagement*

Superformance next argues that the allegations contained in the Shelby and Ford complaints allege facts falling within the Policy's "disparagement" offense. Virginia law defines disparagement as "statements which discredit the quality or utility of a producer's goods." *General Prods. Co., Inc. v. Meredith Corp.,* 526 F.Supp. 546, 553 (E.D.Va.1981).[10] As stated above, the vast majority of the Ford and Shelby allegations concern the "acts" of Superformance or its "use" of the marks and not the words or statements necessary for disparagement. The only potentially relevant allegation contained in the complaints is that Superformance advertised its products as replicas and suggested that its products were similar to Shelby's products. Such a "statement" cannot rise to the level of disparagement because it clearly does not discredit or criticize Shelby's products.

Superformance's reliance on *Knoll Pharmaceutical Co. v. Automobile Ins. Co. of Hartford,* 152 F.Supp.2d 1026 (N.D.Ill. 2001) is misplaced. In that case, complaints against the insured alleged that it falsely represented that no other generic drug was bioequivalent to its product.

*Knoll,* 152 F.Supp.2d at 1030. The insured allegedly misrepresented its product as superior to all other generic drugs and declared that its competitors could not provide an equivalent product. *Id.* In this case, the Shelby and Ford complaints do not allege that Superformance claims to be the superior company or offer superior products.[11] Nor does Superformance allegedly claim that Shelby's products are *not* equivalent to its products. Instead, Superformance's allegedly claims its products are similar in quality to Shelby's products. *Knoll* is thus inapposite.

The other cases relied upon by Superformance are likewise distinguishable. In each case, negative or highly critical statements were made against a competitor or a competitor's products. *See United States Fire Ins. Co. v. Green Bay Packaging, Inc.,* 66 F.Supp.2d 987, 999 (E.D.Wis.1999) (finding disparagement for statements that the underlying plaintiff's company was "on the edge of business ruin" and "could not be trusted to deliver orders"); *Winklevoss Consultants, Inc. v. Federal Ins. Co.,* 11 F.Supp.2d 995, 999 (N.D.Ill.1998) (holding statements that the underlying plaintiff's software was inferior constituted disparagement); *Sun Electric Corp. v. St. Paul Fire and Marine Ins. Co.,* No. 94–C–5846, 1995 WL 270230, at *3 (N.D.Ill. May 4, 1995) (finding coverage for claims that explicitly alleged the insured "disparaged" the underlying plaintiff by painting the plaintiff as a newcomer to the industry). In the present case, there are no allegations that Superformance made any statements regarding the quality of the prod-

---

**10.** Superformance relies on *Knoll Pharmaceutical Co. v. Automobile Ins. Co. of Hartford,* 152 F.Supp.2d 1026, 1038 (N.D.Ill.2001), which similarly defines disparagement as the use of "words which criticize the quality of one's goods or services."

**11.** Attached to its briefs in this matter, Superformance included numerous examples of its advertisements and argued that the advertisements supported its claim for disparagement. Under the exclusive pleading rule, the court will not consider these exhibits because they were not part of the Shelby or Ford complaints.

ucts manufactured or sold by Shelby or Ford. There are no allegations that Superformance discredited Shelby or Ford or their products. Accordingly, there are no allegations of disparagement.

### 3. *Invasion of Privacy*

■ Finally, Hartford's policy provides coverage for an "oral or written publication of material that violates a person's rights of privacy." Superformance argues that the allegations contained in Shelby's amended complaint establishes liability for the invasion of Carroll Shelby's privacy. This argument is wholly without merit. Virginia limits claims for invasion of privacy by statute. *See Williams v. Newsweek, Inc.*, 63 F.Supp.2d 734, 736 (E.D.Va.1999). Section 8.01–40(A) of the Virginia Code provides relief to any "person whose *name, portrait, or picture* is used without having first obtained the written consent of such person...." *See* Va.Code Ann. § 8.01–40(A) (Michie 2000) (emphasis added). This statute provides the only remedy under Virginia law for a claim of invasion of privacy. *Williams*, 63 F.Supp.2d at 736. A review of the Shelby and Ford complaints reveal no allegations that Superformance used the name, portrait, or picture of Carroll Shelby in any way. Thus, the facts alleged in the complaints cannot support a claim for invasion of privacy.[12]

---

**12.** After applying Virginia law throughout its briefs, Superformance cites Massachusetts law for its invasion of privacy claim, no doubt recognizing that Virginia law completely forecloses relief. *See* Pl.Opp. at 11. As stated above, the court finds that Virginia law applies to the invasion of privacy claim. However, Superformance's claim also fails under Massachusetts law. Massachusetts recognizes an action for invasion of privacy for the appropriation of an individual's name or likeness. *See Shepard's Pharmacy v. Stop & Shop*

### CONCLUSION

For the reasons set forth above, the court finds that the Shelby and Ford complaints do not allege any injury potentially covered by Hartford's policy and all injuries are barred by the first publication exclusion. Accordingly, Hartford has no duty to defend Superformance and Hartford's Motion for Summary Judgment is **GRANTED**. Superformance's Motion for Summary Judgment is **DENIED**. This case is **ORDERED** removed from the docket.

The Clerk is **REQUESTED** to send copies of this Order to all counsel of record.

**IT IS SO ORDERED.**

---

*Cos.*, 37 Mass.App.Ct. 516, 523–24, 640 N.E.2d 1112, 1116–17 (1994). The Shelby and Ford complaints do not allege that Superformance used Carroll Shelby's name or likeness in its advertisements. The complaints merely allege that Superformance's product is similar in appearance to Shelby's replica Ford Cobra. Obviously, an automobile does not possess a right to privacy. The unauthorized use of a vehicle's image may support grounds for other causes of action, but it cannot state a claim for invasion of privacy.